STATE OF NEBRASKA, APPELLEE, V.
JERRY DEAN MORROW, SR., APPELLANT.
731 N.W.2d 558

Filed May 18, 2007.   No. S-06-866.

Gerard A. Piccolo, Hall County Public Defender, and Jeff E. Loeffler for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.
## NATURE OF CASE
Jerry Dean Morrow, Sr., was convicted of one count of possession of a controlled substance, a Class IV felony. See Neb.

Rev. Stat. § 28-416(3) (Cum. Supp. 2004). At trial, the State offered in evidence certain out-of-court statements made by an unavailable witness. Morrow sought to impeach such statements with other out-of-court statements from the same witness. The district court denied admission of the out-of-court statements offered by Morrow. For the reasons set forth herein, we reverse the judgment of conviction and remand the cause for a new trial.

## SCOPE OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Kuehn, ante* p. 219, 728 N.W.2d 589 (2007).

## FACTS

An officer of the Grand Island Police Department was on patrol during the late afternoon on July 30, 2005. The officer testified that he observed a car failing to yield to oncoming traffic at an intersection and that he initiated a traffic stop by turning on his patrol unit's emergency overhead lights. The driver saw the officer but continued traveling for about 2½ blocks. The officer observed "a lot of movement inside the vehicle from all the occupants." The driver pulled over to the roadside after the officer activated his siren.

The driver of the car was identified as Morrow. Nancy Sensenbach was sitting in the front passenger seat, and Shelli Ballou was sitting behind Morrow. After collecting Morrow's driver's license and vehicle documentation, the officer returned to his patrol unit and wrote out a traffic citation. He again observed movement inside the car. The officer returned to Morrow's car and explained the citation to Morrow.

Morrow then consented to the officer's request to search Morrow's car. The passengers exited, and the officer searched the interior of the car. He found a disposable coffee cup wedged between the front passenger seat and the center console of the car. The cup contained a small glass pipe with a burned residue substance in it and a baggie containing a crystal substance, which later was determined to be methamphetamine. Morrow denied

having knowledge of the cup. The officer had Morrow sit in the back of the patrol unit while he questioned the passengers.

Upon cross-examination, the officer stated that he told the passengers Morrow would be arrested unless one of them admitted to owning the items found in the cup. On redirect examination, the State elicited testimony from the officer that both Sensenbach and Ballou "denied ownership" of the cup and its contents. On recross-examination, the officer said that he asked Ballou if she was responsible for the items in the cup and that she denied responsibility.

Both Sensenbach and Ballou were called to testify at trial. Sensenbach appeared, but Ballou did not. During the State's case, the defense cross-examined Sensenbach. She said that after Morrow was arrested and driven away by the police, she talked to Ballou about what had happened. Defense counsel then attempted to elicit from Sensenbach what Ballou told Sensenbach about the cup and the methamphetamine. The district court sustained the State's hearsay objection to such questioning.

After the prosecution rested, the defense called Sensenbach in order to present an offer of proof concerning Ballou's statements to Sensenbach. Out of the jury's presence, Sensenbach testified that she and Ballou conversed as Morrow was "pulling over" his vehicle, with the patrol unit behind them. Sensenbach testified that Ballou was concerned a warrant might have been issued for her arrest and that Ballou said, "'Well, if I do go to jail or if I do get arrested, then don't do my stuff that's in the cup.'"

The defense offered Ballou's statement to Sensenbach as a statement against penal interest, an exception to the hearsay rule. See Neb. Rev. Stat. § 27-804(2)(c) (Reissue 1995). The defense asserted that the statement tended to expose Ballou (an unavailable declarant) to criminal liability and that it was offered to exculpate Morrow (the accused). See *id.* Alternatively, the defense offered the statement for the purpose of impeaching the credibility of Ballou's statement to the officer, in which she had denied responsibility for the items in the cup, that had already been admitted in evidence. See Neb. Rev. Stat. § 27-806 (Reissue 1995).

The district court denied admission of the out-of-court statement Ballou allegedly made to Sensenbach claiming responsibility for the "'stuff'" in the cup. The jury found Morrow guilty of possessing a controlled substance, and Morrow appealed.

## ASSIGNMENT OF ERROR

Morrow claims the district court erred in not allowing in evidence Ballou's statement to Sensenbach.

## ANALYSIS

In an offer of proof by Morrow, Sensenbach testified that Ballou said, "'Well, if I do go to jail or if I do get arrested, then don't do my stuff that's in the cup.'" Morrow offered the statement under §§ 27-804(2)(c) and 27-806. The district court refused to admit the statement in evidence.

### ADMISSIBILITY UNDER § 27-806

Section 27-806 provides in relevant part:

> When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain.

Morrow argues that Sensenbach should have been permitted to testify about Ballou's statement so that Morrow could impeach Ballou's credibility. During the State's case, the officer testified that Ballou had denied ownership of the items in the cup.

The State claims that Morrow failed to preserve his § 27-806 argument for appeal. The record indicates that when defense counsel called Sensenbach to testify in order to present an offer of proof, he included both §§ 27-804(2)(c) and 27-806 as bases for admissibility. His theory under § 27-806 was that Ballou's statement to the officer denying responsibility for the methamphetamine was a statement by a coconspirator, which, along with a hearsay statement, is contemplated in § 27-806. After a recess, defense counsel asked to amend his § 27-806 argument and labeled Ballou's statement to the officer as a hearsay

declaration. Defense counsel proposed to make another offer of proof, but the State stipulated that Morrow had adequately preserved the issue for appeal. Thus, the State's claim of procedural waiver is without merit.

■ This court has not previously applied § 27-806, which is substantially the same as rule 806 of the Federal Evidence Rules. When a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule. *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006).

Under § 27-806, if a hearsay statement is admitted in evidence, a party may discredit the out-of-court declarant by utilizing recognized methods of impeachment. The rationale behind this rule has been described in the following manner: " 'The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment . . . as though he had in fact testified.' " *U.S. v. Trzaska*, 111 F.3d 1019, 1024 (2d Cir. 1997) (quoting Fed. R. Evid. 806 advisory committee's notes).

■ Under § 27-806, the declarant of a hearsay statement may be impeached by the introduction of a prior or subsequent statement made by the declarant that is inconsistent with the hearsay statement already admitted at trial. See *Trzaska, supra.* See, also, *Carver v. United States*, 164 U.S. 694, 17 S. Ct. 228, 41 L. Ed. 602 (1897) (inconsistent hearsay statement admissible to impeach dying declaration already admitted). When this impeachment method is used, no opportunity to deny or explain the inconsistency need be given to the declarant. See § 27-806.

■ Section 27-806 does not provide for impeachment, however, if the previously admitted out-of-court statement was nonhearsay. See 2 McCormick on Evidence § 324.2 (Kenneth S. Broun et al., 6th ed. 2006). See, also, *U.S. v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006) (noting "clearly established" principle that statement not offered to prove truth of matter asserted may not be impeached under Fed. R. Evid. 806). If an out-of-court statement is not offered for the purpose of proving the truth of the facts asserted, it is not hearsay. See *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Kuehn, ante* p. 219, 728 N.W.2d 589 (2007). Section 27-806 is not discretionary. If hearsay has been admitted, then the credibility of the declarant may be attacked. Thus, we must determine whether Ballou's statement made to the officer was hearsay. In other words, was the statement offered to prove that the contraband in the coffee cup did not belong to Ballou?

Unlike cases in which a trial court has determined that a statement was hearsay, in this case, Morrow did not object to the admission of Ballou's statement denying responsibility for the items in the cup. When Morrow introduced Ballou's statement that the items were her "'stuff,'" he asserted that Ballou's statement to the officer, already admitted in evidence, was hearsay, subject to impeachment under § 27-806. The district court noted Morrow's § 27-806 argument but excluded Ballou's statement to Sensenbach. No determination was made as to whether Ballou's statement of denial to the officer was hearsay.

The question is, For what purpose was Ballou's out-of-court statement to the officer offered? The only relevant purpose for introducing Ballou's statement of denial was to prove the truth of the matter asserted. If the jury believed that the items did not belong to Ballou or Sensenbach (Sensenbach testified that the items were not hers), the jury could conclude that the items belonged to Morrow, the only other person in the car. The statement was hearsay. Therefore, under § 27-806, the credibility of Ballou (the declarant) could be impeached by the introduction of an inconsistent statement.

The State argues that Ballou's statement denying responsibility for the items in the cup was nonhearsay. The State claims it offered the statement to explain the officer's actions. More specifically, the State claims the statement was introduced to show why the officer did not search Sensenbach and Ballou and why the officer arrested Morrow, the person who the officer believed he had probable cause to arrest.

We have reviewed the officer's testimony in order to put Ballou's statement of denial in context. The record does not

support the State's claim that Ballou's statement to the officer was introduced to show why he decided against searching the passengers. Ballou made the statement to the officer after he had already decided not to search the passengers, not before. The officer testified he did not search Sensenbach and Ballou "[w]hen they got out" of the car because they had not consented to a search and he "had no reason [to search them] at that time." According to the officer, this took place *before Morrow was placed in the patrol unit.* The officer said that Sensenbach and Ballou denied responsibility for the contraband *after Morrow was placed in the patrol unit.* Thus, Ballou's statement of denial could not have been the reason the officer decided not to search Sensenbach and Ballou.

The State also suggests that it introduced Ballou's statement to the officer for the nonhearsay purpose of showing that the officer believed he had probable cause to arrest Morrow. The problem with this theory is that if the State indeed offered Ballou's statement of denial for that purpose, the evidence would be irrelevant. Evidence that is not relevant is not admissible. See Neb. Rev. Stat. § 27-402 (Reissue 1995). What the officer believed with regard to arresting Morrow was not relevant because that issue was not for the jury to decide. Existence of probable cause, as a prerequisite determinant for admissibility of evidence obtained by a search or arrest, is a preliminary question for a court as a judicial function without intervention of a jury. *State v. Salamon,* 241 Neb. 878, 491 N.W.2d 690 (1992). We have stated:

> Under [Neb. Rev. Stat. § 27-104 (Reissue 1995)], a trial court makes preliminary determinations in relation to constitutional protection from unreasonable searches and seizures; therefore, whether police had reasonable or probable cause to believe that a felony had been committed or was being committed [is a] preliminary [question] of fact to be decided by a judge, who makes the final decision on admissibility outside the hearing of the jury and preferably, even sometimes necessarily, before trial.

*Salamon,* 241 Neb. at 888-89, 491 N.W.2d at 697.

Even if the State's purported nonhearsay purposes for introducing Ballou's statement of denial were relevant and supported

by the record, we note that no instruction was given limiting the statement's use by the jury. In order for the State's nonhearsay argument to prevail, an instruction limiting Ballou's statement to the nonhearsay purpose was required. See 2 McCormick on Evidence § 324.2 (Kenneth S. Broun et al., 6th ed. 2006).

In *U.S. v. Burton*, 937 F.2d 324 (7th Cir. 1991), the government enlisted the aid of an informant to catch members of a theft ring. The informant helped the FBI tape several conversations that were admitted in evidence against the defendants. The informant did not testify at the defendants' trial, but the tapes that included the informant's statements were admitted in their entirety, without any instruction to the jury limiting the use of such statements. The defendants later sought to impeach the credibility of the informant under Fed. R. Evid. 806. The government argued that the informant's remarks had been offered not to prove the truth of the matter asserted but to provide context to the conversations in which the defendants participated.

The Seventh Circuit concluded as follows:

> In the absence of any limiting instruction directing the jurors to use [the informant's] statements only to put [the defendants'] statements in context, [the informant's] statements must be taken as hearsay testimony admitted against defendants which they had a right to impeach . . . under Rule 806. . . . The jurors were free to take [the informant's] statements as substantive evidence rather than as mere filler. Once [the informant's] statements were admitted without qualification, the defendants had a right to impeach his credibility.

*Burton*, 937 F.2d at 327-28.

Applying the reasoning of *Burton*, we conclude that Ballou's statement of denial made to the officer must be taken as hearsay testimony against Morrow, testimony that he had a right to impeach under § 27-806. Thus, the district court erred in refusing to permit Morrow to introduce Ballou's inconsistent statement for the purpose of impeaching her credibility under § 27-806.

█ In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable

doubt. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *Id.* In a harmless error review, we look at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error. *State v. McKinney, ante* p. 346, 730 N.W.2d 74 (2007).

The evidence at trial showed that two other people besides Morrow had been riding in his car when the police officer discovered the methamphetamine. Sensenbach denied responsibility for the methamphetamine. And as a witness, she was subjected to cross-examination. The jury also heard, by means of a hearsay statement, that Ballou had denied responsibility for the illegal drug. Ballou was, in effect, a witness. Her credibility was subject to impeachment as if she had testified. See *U.S. v. Trzaska*, 111 F.3d 1019 (2d Cir. 1997). Morrow was not allowed to impeach her credibility with an inconsistent statement under § 27-806. We cannot say that exclusion of the inconsistent statement by Ballou was harmless error. One person allegedly made inconsistent statements concerning ownership of the methamphetamine. The contraband was in a location where it could have been placed by anyone in the car. No other evidence established ownership. We cannot say that the guilty verdict was unattributable to the exclusion of the evidence with which Morrow sought to impeach Ballou's credibility. Therefore, we conclude that it was prejudicial error for the district court to prevent Morrow from introducing the inconsistent statement in order to attack Ballou's credibility in accordance with § 27-806.

### ADMISSIBILITY UNDER § 27-804(2)(C)

Because we have concluded that Ballou's statement to Sensenbach was admissible under § 27-806, we need not address Morrow's alternate argument that the statement was admissible under § 27-804(2)(c). An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate

the case and controversy before it. *State v. King*, 269 Neb. 326, 693 N.W.2d 250 (2005).

## Sufficiency of Evidence

Upon finding error in a criminal trial, the reviewing court must determine whether the evidence presented by the State was sufficient to sustain the conviction before the cause is remanded for a new trial. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). The Double Jeopardy Clause does not forbid a retrial so long as the sum of the evidence offered by the State and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. *Id.* We conclude that the evidence was sufficient to sustain Morrow's conviction. As a result, the cause may be remanded for a new trial.

## CONCLUSION

The district court erred in refusing to permit Morrow to introduce Ballou's inconsistent statement for the purpose of impeaching her credibility under § 27-806. We conclude that the evidence was sufficient to support the conviction, but for the reasons set forth above, we reverse Morrow's conviction and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.