16 Neb. App. 185
STATE OF NEBRASKA, APPELLEE,
v.
WILLIAM P. SUTTON, APPELLANT.
No. A-06-1297.
Court of Appeals of Nebraska.
Filed November 20, 2007.
Paul Wess for appellant.
Jon Bruning, Attorney General, and George R. Love for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
CARLSON, Judge.

INTRODUCTION
William P. Sutton was convicted in the district court for Sheridan County of first degree sexual assault, second degree assault, and use of a weapon to commit a felony. Sutton appeals his convictions, arguing that the trial court erred in allowing the State to present testimony concerning a prior bad act. Based on the reasons that follow, we reverse, and remand for a new trial.

BACKGROUND
On March 24, 2006, an information was filed in the district court for Sheridan County, charging Sutton with one count of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 1995), one count of second degree assault in violation of Neb. Rev. Stat. § 28-309 (Cum. Supp. 2006), and one count of use of a weapon to commit a felony in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1995). The charges arose out of allegations made by Sutton's girlfriend, Jennifer C., with whom he lived at the time. Sutton entered pleas of not guilty.
On July 10, 2006, the State filed a motion for hearing pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 1995), based in its intent to offer prior bad act evidence. Specifically, the State wanted to present evidence pertaining to Sutton's prior conviction for third degree assault on Jennifer. The State asserted that the evidence was admissible to show proof of motive, opportunity, intent, and knowledge. On August 1, a pretrial evidentiary hearing was held on the State's motion. The State presented a certified copy of an information filed August 19, 2004, in the district court for Box Butte County, charging Sutton with third degree assault and first degree false imprisonment. The State also offered a journal entry in regard to those charges, which journal entry stated that a plea agreement was reached and that Sutton pled guilty to the third degree assault charge and the State dismissed the false imprisonment charge. Jennifer testified at the evidentiary hearing. She testified that on June 19, 2004, she and Sutton lived together, and that after having a disagreement, Jennifer went to their apartment to get some clothes and intended to leave and stay overnight somewhere else. Jennifer testified that Sutton would not let her leave the apartment and that he got angry and hit her in the face with his fist, knocking her to the floor. She testified that when she tried to get up, Sutton kicked her in the face. Jennifer testified that during this time, Sutton was telling her that she was not going to leave. She testified that once she got up off the floor, Sutton started hitting her with the belt he had been wearing. Jennifer testified that she eventually was able to dial the 911 emergency dispatch service and that the police arrived shortly thereafter and arrested Sutton.
On September 5, 2006, the trial court entered an order finding that the State had proved Sutton's prior bad act by clear and convincing evidence and that such act had independent relevance. Therefore, the trial court granted the State's motion to present rule 404 evidence.
On September 13, 2006, a jury trial commenced. Jennifer testified that in January 2006, she and Sutton lived together in Rushville, Nebraska, along with Jennifer's child and Sutton's two children. Sutton and Jennifer do not have any children together. Jennifer testified that on January 14, she and Sutton both agreed to end their relationship. Jennifer told Sutton that he and his two children would need to find someplace else to live. Jennifer testified that Sutton wanted to continue living with Jennifer until the end of the school year, but that she did not agree to that arrangement. Jennifer testified that around 7 p.m., Sutton left the residence and went to a bar. Between 7 and 7:30 p.m., Jennifer and her child went to the bar where Sutton was located and Jennifer gave Sutton his car keys. She told him that she was going out of town, that there was no one at their house and the door was locked, and that she did not know where Sutton's two children were. Jennifer and her child then drove to Jennifer's mother's house in Pine Ridge, South Dakota. Jennifer testified that after talking with her mother, she left her mother's house and met a friend in Pine Ridge. Jennifer testified that she returned to her mother's house between 1:30 and 2 a.m. and lay down for awhile. She testified that she later decided it was safe to return to her home in Rushville and that she arrived at her house between 5 and 5:30 a.m. on January 15. Jennifer was asked why it would not be safe to go home, to which she replied, "Because of what was said and that I didn't know how [Sutton] was going to react or anything." Jennifer testified that when she arrived home, she went inside the house and walked through all the rooms to make sure that Sutton was not there. Jennifer testified that she then lay down on the couch in the living room to sleep and that sometime later, she opened her eyes and Sutton was standing over her, asking her where his children were. Jennifer testified that she believed Sutton had been drinking alcohol, based on his stance and his speech. She testified that Sutton asked her repeatedly where his children were and that she responded that she did not know. Jennifer testified that Sutton then began hitting her with the handle of a screwdriver while continuing to ask her where his children were. She testified that Sutton also told her that he would give her a reason to leave. Jennifer testified that he then took off the belt he was wearing and started hitting her with it. Jennifer testified that after hitting her multiple times with the belt, Sutton told her to go into the bedroom. She testified that she told Sutton "no," to which he responded that he was going to continue hitting her if she did not go into the bedroom. Jennifer testified that she went into the bedroom and sat at the edge of the bed. She testified that Sutton next told her to take her clothes off and that when she refused, Sutton told her he was going to hurt her. Jennifer testified that she took her clothes off and that Sutton pushed her down on the bed and had sexual intercourse with her without her consent. Jennifer testified that when Sutton was done forcing himself on her, he fell asleep, at which time Jennifer got dressed and went to the police station. She testified that at the police station, she told an officer what had happened and made a written statement, and that the officer then took her to a hospital, where a rape kit examination was performed.
During cross-examination of Jennifer, Sutton's counsel asked her about her and Sutton's decision to breakup on January 14, 2006. The following exchange occurred:
Q. Okay. Now, you had testified earlier that you and ... Sutton had agreed to go your separate ways, correct?
A. Yes.
Q. And at that point it was a mutual agreement to end your relationship; is that correct?
A. Yes.
Q. And it was an amicable breakup?
A. Yes, we both agreed on it.
Q. In fact, you agreed thereafter you would remain friends; is that correct?
A. Yes, as far as I was concerned.
In response to defense counsel's questions on cross-examination, the State asked Jennifer the following questions on redirect examination: "Q. If this was an amicable breakup, why were you scared of him? A. Because I know how he can get. Q. What do you mean? A. He got abusive towards me before. Q. Where was that? A. Down in Alliance." At that point, Sutton's counsel objected based on relevance and rule 404 evidence. The trial court overruled the objection and allowed the line of questioning to continue. Sutton's counsel then asked for and was given a continuing objection. Jennifer further explained that the prior assault happened 1½ to 2 years earlier, that she and Sutton were living together at the time, that Sutton had been drinking on the night the incident occurred, and that Sutton hit her with his belt. Jennifer testified that Sutton became angry when he discovered that she had gone to her and Sutton's apartment to get some clothes because she intended to stay overnight at a friend's house. She further testified that the police were called and that Sutton was arrested.
In addition to Jennifer's testimony, the State's evidence included testimony from the police officer whom Jennifer spoke to at the police station on January 15, 2006, the nurse and doctor who examined Jennifer and performed the rape kit at the hospital, and Jennifer's mother. Sutton did not present any evidence.
At the end of trial, the jury found Sutton guilty on all three charges. The trial court sentenced Sutton to 10 to 20 years' imprisonment on the first degree sexual assault conviction, 2 to 5 years' imprisonment on the second degree assault conviction, and 2 to 5 years' imprisonment on the use of a weapon to commit a felony conviction. The sentences were ordered to run consecutively.

ASSIGNMENT OF ERROR
Sutton assigns that the trial court erred in failing to sustain his objections to the State's introduction of prior bad act evidence.

STANDARD OF REVIEW
[1-3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. State v. Kuehn, 273 Neb. 219, 728 N.W.2d 589 (2007); State v. Robinson, 272 Neb. 582, 724 N.W.2d 35 (2006). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. State v. Wisinski, 268 Neb. 778, 688 N.W.2d 586 (2004); State v. Harris, 263 Neb. 331, 640 N.W.2d 24 (2002). The admissibility of evidence under rule 404(2) must be determined upon the facts of each case and is within the discretion of the trial court. State v. Wisinski, supra; State v. Harris, supra.

ANALYSIS
[4-7] Sutton assigns that the trial court erred in failing to sustain his objections to the State's introduction of prior bad act evidence. Rule 404(2) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Rule 404(2) prohibits the admission of evidence of other bad acts for the purpose of demonstrating a person's propensity to act in a certain manner. State v. Kuehn, supra; State v. McPherson, 266 Neb. 715, 668 N.W.2d 488 (2003). Evidence of other crimes which is relevant for any purpose other than to show the actor's propensity is admissible under rule 404(2). State v. Kuehn, supra; State v. McPherson, supra. Evidence that is offered for a proper purpose is often referred to as having "special" or "independent" relevance, which means its relevance does not depend on its tendency to show propensity. State v. Sanchez, 257 Neb. 291, 597 N.W.2d 361 (1999); State v. McManus, 257 Neb. 1, 594 N.W.2d 623 (1999). The admissibility of evidence under rule 404(2) must be determined upon the facts of each case and is within the discretion of the trial court. State v. Kuehn, supra; State v. Wisinski, supra.
[8] Evidence of other bad acts falls into two categories under rule 404(2), according to the basis of the relevance of the acts: (1) evidence which is relevant only to show propensity, which is not admissible, and (2) otherwise relevant (nonpropensity) evidence, which is admissible. State v. Kuehn, supra; State v. McManus, supra.
[9,10] The reason for the rule refusing to allow evidence of other crimes is that such evidence, despite its relevance, creates the risk of a decision by the trier of fact on an improper basis. State v. Sanchez, supra; State v. Myers, 15 Neb. App. 308, 726 N.W.2d 198 (2006). The exclusion of other crimes evidence offered to show a defendant's propensity protects the presumption of innocence and is deeply rooted in our jurisprudence. Id.
[11] An appellate court's analysis under rule 404(2) considers (1) whether the evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice, and (3) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. State v. Trotter, 262 Neb. 443, 632 N.W.2d 325 (2001); State v. Sanchez, supra.
Therefore, to determine whether the prior bad act evidence was admissible in the instant case, we first consider whether such evidence was relevant for some purpose other than to show Sutton's propensity to commit the crimes charged in the instant case. A jury instruction is the only indication on the record before us of the purpose for which the trial court allowed the evidence of Sutton's prior assault on Jennifer. The instructions given to the jury before it began deliberating included an instruction which stated that the prior bad act evidence was admitted for the limited purpose of helping the jury decide whether Sutton had the motive and intent to commit the crimes with which he was charged. Thus, we will consider motive and intent as possible purposes for admitting the evidence.
[12-14] Evidence of other crimes which are similar to the crime charged is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged. State v. Kuehn, 273 Neb. 219, 728 N.W.2d 589 (2007). Motive is defined as that which leads or tempts the mind to indulge in a criminal act. State v. Burdette, 259 Neb. 679, 611 N.W.2d 615 (2000); State v. Sanchez, supra. Even when proof of motive is not an element of a crime, motive for the crime charged is relevant to the State's proof of the intent element. State v. Burdette, supra. See State v. McBride, 250 Neb. 636, 550 N.W.2d 659 (1996).
[15] Intent is not an element of first degree sexual assault as defined by § 28-319, one of the offenses with which Sutton was charged. See State v. Sanchez, 257 Neb. 291, 597 N.W.2d 361 (1999). Intent, however, must be proved with respect to the second degree assault charge. Section 28-309(1)(a) provides that "[a] person commits the offense of assault in the second degree if he or she: (a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument." The State therefore was required to prove that Sutton intended to cause bodily injury to Jennifer with a dangerous instrument. The State seems to argue that the prior bad act evidence is admissible to show motive and intent because the prior bad act is similar to the events in the instant case. In both instances, Sutton and Jennifer were living together, Jennifer was leaving Sutton or they were breaking up, Sutton had been drinking, and Sutton became angry and assaulted Jennifer, using his belt in both instances.
In State v. McManus, 257 Neb. 1, 594 N.W.2d 623 (1999), the Nebraska Supreme Court was faced with a situation in which the defendant, on a prior occasion and in the crime charged, had been drinking at a bar, became intoxicated and angry, and used a gun to intimidate another individual. The State argued that evidence of the prior act was admissible to show his intent, because the two occurrences were factually similar. The court found:
The most obvious reason why the similarity between the two acts may show the intent of [the defendant] in the instant case is the inference that [the defendant] is the type of person who acts with violent intent when he is angry. However, this is classic propensity reasoning, and thus, although the evidence may be relevant for that purpose, it must be excluded under rule 404(2).
State v. McManus, 257 Neb. at 10, 594 N.W.2d at 630.
In the instant case, the prior bad act evidence implies that Sutton is the type of person who acts with violent intent when he wants to control someone, particularly Jennifer. Like McManus, this is classic propensity reasoning and may not be used to show Sutton's motive and intent in the crimes charged. Thus, we conclude that the prior bad act evidence was not offered for a proper purpose under rule 404(2) and, therefore, that the trial court abused its discretion in admitting such evidence at trial. Because the evidence was not offered for a proper purpose under rule 404(2), we need not address the second and third analytical steps set forth in State v. Trotter, 262 Neb. 443, 632 N.W.2d 325 (2001), in order to reach our conclusion that the trial court abused its discretion in receiving such evidence.
The State puts forth an argument in which it contends that the prior bad act evidence was admissible regardless of whether it was or was not admissible under rule 404(2), because Sutton "`opened the door" for evidence of the prior assault. Brief for appellee at 8. The State points out that no prior bad act evidence was introduced during direct examination of Jennifer. It contends that Sutton "opened the door" to such evidence by introducing evidence during cross-examination of Jennifer that Jennifer and Sutton's relationship ended amicably, thereby leaving the jury with the impression that Sutton had no motive to assault Jennifer. The State further contends that the testimony about the prior assault during redirect of Jennifer simply rebutted the evidence brought out by Sutton on cross-examination by having Jennifer explain why she was afraid of Sutton if the breakup was amicable.
We conclude that Sutton did not "open the door" in regard to the prior assault. As previously stated, the State argues that Jennifer's amicable breakup testimony on cross-examination left the jury with the impression that Sutton had no motive to commit the crimes. However, Jennifer testified on direct examination that she and Sutton mutually agreed to end their relationship. Thus, reemphasizing this point on cross-examination did not bring out any new evidence and did not "open the door" in regard to evidence of the prior assault. Jennifer also testified that before Sutton started hitting her with the screwdriver, he asked where his children were and Jennifer told him she did not know. Thus, the jury could have viewed Jennifer's failure to know where Sutton's children were as Sutton's motive for the assault.
[16-18] Having determined that the prior bad act evidence was erroneously admitted, the next question we must address is whether the admission of the evidence was harmless beyond a reasonable doubt. In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. State v. Morrow, 273 Neb. 592, 731 N.W.2d 558 (2007); State v. Robinson, 271 Neb. 698, 715 N.W.2d 531 (2006). Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. Id. In a harmless error review, we look at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error. State v. Morrow, supra; State v. McKinney, 273 Neb. 346, 730 N.W.2d 74 (2007). Upon hearing the evidence of Sutton's previous assault on Jennifer, the jury could have inferred that because Sutton had acted violently against Jennifer in the past, he must have acted in conformity with that character in the instant case, thereby reaching a verdict on an improper basis. Therefore, we cannot say that the guilty verdict was unattributable to the prior bad act evidence, and we conclude that the erroneous admission of the bad act evidence in the instant case was not harmless error.
[19,20] In addition, upon finding error in a criminal trial, the reviewing court must determine whether the evidence presented by the State was sufficient to sustain the conviction before the cause is remanded for a new trial. State v. Morrow, supra; State v. Anderson, 258 Neb. 627, 605 N.W.2d 124 (2000). The Double Jeopardy Clause does not forbid a retrial so long as the sum of the evidence offered by the State and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. Id. We conclude that the evidence was sufficient to sustain Sutton's conviction. As a result, the cause may be remanded for a new trial.
We also find it necessary to note that when the trial court allowed the prior bad act testimony into evidence during Sutton's trial, it did not comply with the requirements set forth in State v. Sanchez, 257 Neb. 291, 597 N.W.2d 361 (1999). In Sanchez, the Nebraska Supreme Court held that
the proponent of evidence offered pursuant to rule 404(2) shall, upon objection to its admissibility, be required to state on the record the specific purpose or purposes for which the evidence is being offered and that the trial court shall similarly state the purpose or purposes for which such evidence is received.... Any limiting instruction given upon receipt of such evidence should likewise identify only those specific purposes for which the evidence was received.
257 Neb. at 308, 597 N.W.2d at 374 (citation omitted).
In the instant case, Sutton made a rule 404 objection when the State began questioning Jennifer about the prior assault. The court simply overruled the objection. The trial court did not have the State indicate the specific purpose for which the evidence was being offered, and the trial court did not state the purpose for which such evidence was received. The trial court also failed to state such purpose at the time of the hearing required by rule 404(3)which was an earlier opportunity for the trial court to "state the purpose or purposes" in order to comply with the procedures mandated in Sanchez. In its final instructions to the jury at the close of the case, the court did give a jury instruction in regard to the prior bad act evidence. However, the court did not give a limiting instruction at the time the rule 404 evidence was introduced. We need not consider whether the trial court's failure to abide by the Sanchez requirements constitutes reversible error in the instant case, given that we have concluded that the evidence was inadmissible. We simply point it out to remind trial courts of the requirements set forth in State v. Sanchez, supra.

CONCLUSION
We conclude that the trial court erroneously admitted evidence of Sutton's prior bad act for an improper purpose and that the admission of this evidence was not harmless error. Accordingly, we reverse, and remand for a new trial in accordance with this opinion.
REVERSED AND REMANDED FOR A NEW TRIAL.