Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:11 PM CDT

STATE OF NEBRASKA, APPELLEE, V.
TRAVIS T. MITCHELL, APPELLANT.
___ N.W.2d ___

Filed February 23, 2016.    No. A-15-086.

1. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

2. **Criminal Law: Evidence.** In reviewing a sufficiency of the evidence claim, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

4. **Drunk Driving: Words and Phrases.** As used in Neb. Rev. Stat. § 60-6,196 (Reissue 2008), the phrase "under the influence of alcoholic liquor or of any drug" requires the ingestion of alcohol or drugs in an amount sufficient to impair to any appreciable degree the driver's ability to operate a motor vehicle in a prudent and cautious manner.

5. **Police Officers and Sheriffs: Drunk Driving: Witnesses.** After sufficient foundation is laid, a law enforcement officer may testify that in his or her opinion, a defendant was driving under the influence.

6. **Convictions: Drunk Driving: Evidence.** Either a law enforcement officer's observations of a defendant's intoxicated behavior or the defendant's poor performance on field sobriety tests constitutes sufficient evidence to sustain a conviction of driving while under the influence of alcoholic liquor.

7. **Criminal Law: Motions for Mistrial: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the

course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

8. **Motions for Mistrial: Appeal and Error.** The decision whether to grant a motion for mistrial will not be disturbed on appeal in the absence of an abuse of discretion.

9. **Motions for Mistrial: Motions to Strike: Proof: Appeal and Error.** Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

10. **Miranda Rights: Appeal and Error.** Where the record does not indicate that a defendant received any *Miranda* warnings before remaining silent, an appellate court will treat the silence as occurring pre-*Miranda*.

11. **Miranda Rights: Impeachment.** The reading of *Miranda* rights is the key factor in determining whether the government can use a defendant's silence against him or her.

12. **Miranda Rights: Impeachment: Due Process.** Impeaching a defendant's version of the crime at trial by utilizing his or her postarrest, post-*Miranda* silence violates due process. In such a case, the implicit assurance that silence will carry no penalty renders it unfair to use the defendant's silence against him or her.

13. **Miranda Rights: Impeachment.** The prosecution may impeach the defendant on the stand by utilizing his or her silence occurring after arrest where the record does not reflect that he or she had been given *Miranda* warnings at the time.

14. **Miranda Rights: Impeachment: Mental Competency.** A defendant's postarrest, post-*Miranda* silence cannot be used as substantive evidence to refute the defendant's insanity defense.

15. **Miranda Rights: Impeachment.** The State may utilize a defendant's postarrest, pre-*Miranda* silence as substantive evidence of his or her guilt; the giving of *Miranda* is the key inquiry in determining when the State can utilize a defendant's silence.

16. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime.

17. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in

considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, Christopher Eickholt, and Nathan Sohriakoff for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Moore, Chief Judge, and Irwin and Inbody, Judges.

Irwin, Judge.

## I. INTRODUCTION

Travis T. Mitchell appeals his conviction and sentence for driving under the influence (DUI), fourth offense, with refusal to submit to a chemical test, and for driving during revocation. On appeal, Mitchell argues that there was insufficient evidence to support his convictions for DUI with refusal to submit to a chemical test and for driving during revocation, that the district court erred in overruling his motion for mistrial based on the prosecutor's comment during closing arguments, and that he received excessive sentences. We find no merit to Mitchell's assertions on appeal and affirm.

## II. BACKGROUND

The events giving rise to this case occurred on June 6, 2014. That morning, Mitchell and his mother, Lucille Mitchell, went to a home improvement store in Lincoln, Nebraska, to purchase supplies to build a dog house. Lucille drove the pair in a beige sport utility vehicle (SUV). On the way to the home improvement store, Mitchell asked Lucille to stop at a nearby liquor store. Lucille stopped at the store, and Mitchell purchased beer and a bottle of liquor. Mitchell drank a "sip of each" before he and Lucille went into the home improvement store.

At the home improvement store, Lucille and Mitchell purchased lumber and other building materials. In the parking lot, a store employee began tying the lumber on top of the vehicle, but Mitchell became impatient and drove off in the SUV, leaving Lucille behind in the parking lot. Lucille was worried that Mitchell might hurt himself or another driver, so she notified the police that Mitchell had driven off in the SUV.

After Lucille called the police, the police dispatcher notified officers patrolling the area that Mitchell had been reported driving a beige SUV dangerously. Officer James Quandt of the Lincoln Police Department was stopped at a red light when he observed a man he believed to be Mitchell driving a vehicle matching the description of the beige SUV. Officer Quandt was able to confirm the driver was Mitchell after matching his appearance to a photograph on his in-car computer system. Officer Quandt also determined that Mitchell's driver's license was revoked. Officer Quandt followed Mitchell from a distance. Officer Quandt observed Mitchell accelerate, change lanes a few times, and run a red light. Officer Quandt eventually lost sight of Mitchell's vehicle.

Shortly after Officer Quandt observed Mitchell driving, Officer Sarah Williams of the Lincoln Police Department spotted a vehicle matching the SUV's description. The driver resembled a photograph of Mitchell that Officer Williams was able to view on her in-car computer system. Officer Williams followed Mitchell and observed him driving erratically, including speeding more than 15 miles per hour over the speed limit and passing other cars in the center turn lane. Like Officer Quandt, Officer Williams lost sight of the SUV.

After Officer Quandt had lost sight of Mitchell's vehicle, he had radioed other officers to notify them that Mitchell might be driving to a nearby address where Mitchell and Lucille lived. Officer Joseph Keiser of the Lincoln Police Department was near the area and arrived at Mitchell's house before Mitchell did. Officer Keiser positioned himself in a nearby alleyway and then observed Mitchell pull into the driveway of the house

at a high rate of speed. When Mitchell pulled into the driveway, he drove over the grass, leaving tire marks.

After Mitchell had parked in the driveway, Officer Keiser approached the SUV and instructed Mitchell several times to exit the vehicle. Mitchell did not comply with the instructions. Eventually, Officer Keiser physically removed Mitchell from the SUV and handcuffed him.

After Mitchell was removed from the SUV, officers located an alcohol container in its center console and a paper bag containing alcohol on its passenger's side floor. In total, officers located one partially empty container of hard liquor without a lid and five beer cans, at least one of which was open.

Officer Quandt, the officer who had previously observed Mitchell run a red light, arrived at Mitchell's house and transported Mitchell to the Lancaster County Jail. At the jail, Mitchell became aggressive and refused to submit to a breath test. Mitchell was charged both with DUI with refusal to submit to a chemical test and with driving during revocation.

The case proceeded to trial on December 1, 2014. At the trial, Lucille testified that Mitchell suffers from mental health problems. According to Lucille, the symptoms of Mitchell's mental health issues resemble the behaviors he displays when he is intoxicated. Lucille testified that on the morning of June 6, Mitchell was displaying behaviors that could have been consistent with him being intoxicated, including being agitated, making poor choices, and being impatient. Lucille also testified that she smelled alcohol on Mitchell's clothes.

The police officers involved in following and arresting Mitchell also testified at the trial. Officer Williams testified that she was trained in DUI investigations. Officer Williams further testified that she observed Mitchell driving erratically and that in her opinion, Mitchell's driving was unsafe and consistent with the behavior of a person who was under the influence. Officer Keiser testified that the manner in which Mitchell drove into the driveway was unsafe. Officer Keiser further testified that Mitchell smelled of alcohol and was generally

confused. Officer Keiser stated that he had experience dealing with drunk individuals and that in his opinion, Mitchell was under the influence of alcohol.

The State also called Officer Quandt to the stand. Officer Quandt testified that he had extensive DUI training. Officer Quandt opined that Mitchell was under the influence of alcohol and unable to safely operate a vehicle on the day in question. In support of his opinion that Mitchell was intoxicated, Officer Quandt noted that Mitchell had a hard time balancing, staggered, could not walk in a straight line, smelled of alcohol, slurred his speech, and had bloodshot eyes.

The jury found Mitchell guilty of DUI with refusal to submit to a chemical test and of driving during revocation. After the verdicts, the court held an enhancement hearing and determined that the State had proven Mitchell had three prior DUI convictions. Consequently, the court sentenced Mitchell to 5 to 10 years' imprisonment for fourth-offense DUI with refusal to submit to a chemical test and revoked his driving privileges and driver's license for 15 years. The court also sentenced Mitchell to 1 to 2 years' imprisonment and revoked his driving privileges and driver's license for 15 years for driving during revocation. The court ordered that the sentences be served concurrently to one another and consecutively to any other sentences previously imposed. Mitchell appeals from his convictions and sentences. Additional facts will be discussed, as necessary, in the analysis section of this opinion.

## III. ASSIGNMENTS OF ERROR

On appeal, Mitchell assigns three errors. First, Mitchell asserts there was insufficient evidence to support his convictions for DUI with refusal to submit to a chemical test and for driving during revocation. Second, Mitchell claims the district court erred when it overruled his motion for mistrial based on the prosecutor's comment during closing argument that Mitchell did not deny being intoxicated. Third, Mitchell asserts that he received excessive sentences.

## IV. ANALYSIS

### 1. Sufficiency of Evidence

Mitchell argues that there was insufficient evidence to support his convictions for DUI with refusal to submit to a chemical test and for driving during revocation. Mitchell asserts that the only evidence regarding his intoxication "was simply anecdotal evidence from an officer or two as to the officer's opinion." Brief for appellant at 15. We find no merit to this assignment of error.

[1,2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

[3] First, we note that Mitchell assigns as error the sufficiency of the evidence to support both his DUI and his driving during revocation convictions. However, Mitchell makes no argument with respect to sufficiency of the evidence for driving during revocation. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015). Because Mitchell fails to specifically argue the sufficiency of the evidence to support his conviction for driving during revocation, we do not address that assignment of error.

[4-6] Next, we turn to Mitchell's assertion that the evidence was insufficient to convict him of DUI with refusal to submit to a chemical test. As used in Neb. Rev. Stat. § 60-6,196 (Reissue 2008), the phrase "under the influence of alcoholic liquor or

of any drug" requires the ingestion of alcohol or drugs in an amount sufficient to impair to any appreciable degree the driver's ability to operate a motor vehicle in a prudent and cautious manner. *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009). After sufficient foundation is laid, a law enforcement officer may testify that in his or her opinion, a defendant was driving under the influence. *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000). Either a law enforcement officer's observations of a defendant's intoxicated behavior or the defendant's poor performance on field sobriety tests constitutes sufficient evidence to sustain a conviction of driving while under the influence of alcoholic liquor. *State v. Falcon*, 260 Neb. 119, 615 N.W.2d 436 (2000).

In the case at hand, the State laid foundation for various police officers to testify regarding their opinion that Mitchell was under the influence. See *Baue, supra*. Officer Williams testified that she was trained in DUI investigations and that she had observed Mitchell driving erratically. Officer Williams provided her opinion that Mitchell's unsafe driving was consistent with the behavior of a person driving under the influence. Similarly, Officer Keiser testified that he had experience in dealing with intoxicated individuals and that, in his opinion, Mitchell was under the influence of alcohol. Officer Quandt also testified that he had extensive DUI training. Officer Quandt testified that Mitchell had difficulty balancing, smelled of alcohol, slurred his speech, and had bloodshot eyes. Officer Quandt opined that due to Mitchell's having ingested alcohol, "I don't feel he was safe to operate a motor vehicle at that time." Lastly, Officer Quandt testified that Mitchell refused to submit to a chemical test after he was transported to the jail. This evidence, viewed in the light most favorable to the State, was sufficient for a rational jury to find Mitchell guilty beyond a reasonable doubt of DUI with refusal to submit to a chemical test. There is no merit to Mitchell's assignment of error.

### 2. Motion for Mistrial

Mitchell argues that the trial court erred when it did not grant a mistrial based on the prosecutor's stating in closing argument that Mitchell never denied being intoxicated. Mitchell argues the comment "is a violation of [Mitchell's] right[] to remain silent, his right to a fair trial, and is inconsistent with the requirement that the [S]tate has the burden of proof." Brief for appellant at 16. We find this assignment of error to be without merit.

[7,8] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). The decision whether to grant a motion for mistrial will not be disturbed on appeal in the absence of an abuse of discretion. *Daly, supra*.

[9] Additionally, error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id.*

At the trial, Officer Quandt testified that he transported Mitchell to the jail after Mitchell was apprehended in his driveway. According to Officer Quandt, Mitchell was under arrest at the time he was transported. Officer Quandt testified that Mitchell made voluntary statements regarding his arrest during the ride to the jail. The State played for the jury an audio recording of the trip to the jail. In the recording, Mitchell repeatedly argues that he should not be under arrest because police did not catch him driving.

During closing arguments, the prosecutor made the following statement regarding the audio recording of Mitchell and Officer Quandt in the squad car:

Now, interesting, if you recall the audio, and that will go back with you and if you want to listen to it, you can listen to it again. He never says, . . . Mitchell never says, I'm not drunk. I wasn't drinking. Why are you arresting me for [DUI], I'm not drunk. What he says is, "You didn't catch me driving. You didn't arrest me in my truck." And later, "You didn't breathalyze me in my car." Never once does he say he's not drunk. It's all about where you got me. He never denied that he's drunk, he never denied that he —

At that point in the closing argument, Mitchell objected. In a sidebar conference, Mitchell's attorney explained that his objection was based on the fact that "Mitchell does not have to deny anything. He does not have to prove anything." Mitchell argued the prosecutor's statement referred to facts not in evidence and that it implied that "[Mitchell's] got some sort of burden because he failed to deny that he was intoxicated." Mitchell asked for a mistrial or, in the alternative, that the jury be ordered to disregard the prosecutor's comment.

In response to Mitchell's objection, the court stated that "there is some case law that talks about pre-arrest silence, which is in essence what you're arguing, his silence, that is, he didn't deny it, he didn't say this, he didn't say that." The court went on to note that Mitchell's silence occurred after he had been arrested. Mitchell's attorney again moved for a mistrial, arguing the comment was "unfair and prejudicial and improper." The court overruled the motion for mistrial, but granted the alternative motion to strike the comment and instruct the jury. The court told the jury, "I am going to instruct the jury to disregard [the prosecutor's] comments about what . . . Mitchell may or may not have denied. So you are instructed to disregard those comments and not consider them."

After the parties' closing arguments, the court read the jury instructions aloud and submitted a copy to the jury for their reference. The jury instructions stated, in relevant part, "The burden of proof is always on the State to prove beyond a

reasonable doubt the material elements of the crime charged and this burden never shifts."

As a preliminary matter, we note that the State argues Mitchell failed to preserve error on this issue because he did not object to a violation of his right to remain silent at the trial. During the closing argument, Mitchell objected that he "d[id] not have to deny anything." The trial court understood Mitchell's objection to be based on the right to remain silent as indicated by its statement that "there is some case law that talks about pre-arrest silence, which is in essence what you're arguing, his silence, . . . he didn't deny it." After this comment by the court, Mitchell again moved for a mistrial, arguing that the prosecutor's comment was "unfair and prejudicial and improper." We find this record demonstrates Mitchell's objection implicated the right to remain silent and preserved the issue for appeal.

[10] Next, the parties state that Mitchell had not been read his *Miranda* rights at the time the silence in question occurred. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). However, the parties do not provide us a citation to the record for this factual assertion, nor could we locate evidence in the bill of exceptions reflecting when Mitchell was read his *Miranda* rights. The situation is similar to that in *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). In *Huff*, the defendant argued that officers had improperly commented on his invocation of the right to remain silent. It was not apparent from the record, however, whether the defendant was advised of his *Miranda* rights at the time. The court "treated the defendant's silence as pre-*Miranda* [because] the record did not indicate that he had received any *Miranda* warnings." *Huff*, 282 Neb. at 112, 802 N.W.2d at 104. In the present case, the record does not reflect when Mitchell received *Miranda* warnings and we will therefore treat Mitchell's silence as occurring pre-*Miranda*.

[11,12] In a series of cases, the U.S. Supreme Court has repeatedly indicated that reading a defendant his or her

*Miranda* rights is the key factor in determining whether the government can use a defendant's silence. In *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), the Court held that it violated due process to allow the government to impeach a defendant's version of the crime given at trial by utilizing his or her postarrest, post-*Miranda* silence. The Court stated:

[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Doyle*, 426 U.S. at 618.

[13,14] Employing similar reasoning, the U.S. Supreme Court in *Fletcher v. Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982), again treated the giving of *Miranda* warnings as the point after which the government could not use a defendant's silence against him. The *Fletcher* Court held that the government was permitted to impeach the defendant on the stand by utilizing his silence after arrest because the record did not reflect that he been read his *Miranda* warnings at the time. Lastly, in *Wainwright v. Greenfield*, 474 U.S. 284, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986), the Supreme Court held that the government could not use a defendant's postarrest silence as substantive evidence to refute the defendant's insanity defense because the silence had occurred post-*Miranda*.

The Nebraska Supreme Court followed the *Doyle* line of cases, starting in *State v. Lofquest*, 223 Neb. 87, 388 N.W.2d 115 (1986). In *Lofquest*, the court remanded the postconviction action for an evidentiary hearing to determine whether the prosecutor's cross-examination of the defendant by means of his refusal to speak referred to pre- or post-*Miranda* silence. The court noted that per *Doyle* and *Fletcher*, the giving of *Miranda* warnings is the point in time after which

impeachment use of a defendant's silence violates due process. *Lofquest, supra*.

Next, in *State v. Harms*, 263 Neb. 814, 643 N.W.2d 359 (2002), the court addressed the defendant's contention that the State should not be permitted to use his silence as substantive evidence of sanity in order to refute his insanity defense. The case differed from *Lofquest* because the defendant in *Harms* did not testify at the trial and so the State did not desire to use his silence to impeach him, but, rather, to prove his sanity. The *Harms* court relied on the reasoning of *Doyle* to conclude that the silence of the defendant, after being arrested and receiving *Miranda* warnings, could not be used against him to refute his claim of insanity. However, the court concluded that the State could utilize the silence of the defendant in *Harms* before being arrested and read his *Miranda* rights. As in *Lofquest*, the *Harms* court relied on the line of cases stemming from *Doyle*, which treated the giving of *Miranda* warnings as the key point in time after which the government was not permitted to utilize the defendant's silence. See, also, *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015) (determining that prosecutor's comment on defendant's prearrest, pre-*Miranda* silence was permissible because prior cases have viewed giving *Miranda* warnings as triggering event that prevents State from using defendant's silence).

However, these cases do not directly govern the issue presented in Mitchell's case. In *Lofquest, supra*, the silence was used to impeach the defendant; in the present case, the prosecutor's comment utilized Mitchell's silence as evidence of his guilt. Likewise, in *Harms, supra*, the silence in question occurred before the defendant was arrested and before he had been read his *Miranda* rights, whereas in the case at hand, Mitchell had not yet been read his *Miranda* rights at the time of his silence even though he was under arrest. The question of whether a defendant's postarrest but pre-*Miranda* silence can be used as substantive evidence of his or her guilt has not been addressed by any of the previously discussed cases.

The Eighth Circuit Court of Appeals, however, has analyzed the issue of postarrest, pre-*Miranda* silence used as substantive evidence. In *U.S. v. Frazier*, 408 F.3d 1102 (8th Cir. 2005), the government utilized the defendant's postarrest, pre-*Miranda* silence as substantive evidence of guilt in its case in chief. The Eighth Circuit stated that "[a]lthough [the defendant] was under arrest, there was no governmental action at that point inducing his silence," since he had not yet been read his *Miranda* rights. *Frazier*, 408 F.3d at 1111. The *Frazier* court therefore concluded that the government could utilize the defendant's postarrest, pre-*Miranda* silence as substantive evidence of his guilt.

We agree with the reasoning of the Eighth Circuit. The Nebraska Supreme Court made it clear in *Lofquest* and *Harms* that the giving of *Miranda* warnings—not the fact of being under arrest—is the key inquiry in determining when the State can utilize a defendant's silence. See, *State v. Harms*, 263 Neb. 814, 643 N.W.2d 359 (2002); *State v. Lofquest*, 223 Neb. 87, 388 N.W.2d 115 (1986). Before the giving of *Miranda* warnings, there is no state action inducing the defendant to remain silent. See *Frazier, supra*. This logic applies equally to impeachment use of silence as to the use of silence as substantive evidence of a defendant's guilt.

[15] In the present case, we presume Mitchell had not yet been given his *Miranda* warnings at the time he remained silent. See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). Because his silence occurred pre-*Miranda*, the prosecutor's comment utilizing Mitchell's silence as evidence of his guilt was not improper.

Mitchell also argues the prosecutor's comment improperly implied that Mitchell had a burden to disprove the charges against him. However, the trial court instructed the jury to disregard the prosecutor's comment about what Mitchell did not deny. Furthermore, the jury instructions correctly stated that the burden to prove the alleged crimes beyond a reasonable doubt rested on the State. In light of the court's admonishing

the jury to disregard the comment and properly instructing the jury, Mitchell has not demonstrated that he suffered actual prejudice as a result of the trial court's denial of his motion for mistrial. See *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006).

We conclude the trial court did not abuse its discretion in refusing to grant a mistrial.

### 3. Excessive Sentences

Mitchell argues that the sentences he received were excessive. Mitchell asserts that the trial court did not give proper weight to his mental health issues and instead focused solely on his criminal history. We disagree.

[16,17] When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Mitchell was sentenced to 5 to 10 years' imprisonment, and his driving privileges and driver's license were revoked for 15 years for fourth-offense DUI, a Class III felony. See Neb. Rev. Stat. § 60-6,197.03(8) (Cum. Supp. 2014). Mitchell's sentence is within the statutory range. See, *id.* (stating that person convicted of fourth-offense DUI shall have his or her license revoked for 15 years); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014) (providing sentencing range for Class III felonies of 1 to 20 years' imprisonment). Mitchell was sentenced to 1 to 2 years' imprisonment, and his driving privileges and driver's

license were revoked for 15 years for driving during revocation. Mitchell's sentence for driving during revocation is also within the statutory limits. See, Neb. Rev. Stat. § 60-6,197.06 (Reissue 2010) (stating that driving during revocation is Class IV felony and that person convicted of driving during revocation shall have his or her license revoked for 15 years); § 28-105 (stating that sentencing range for Class IV felony is 0 to 5 years' imprisonment).

In the present case, the court stated at the sentencing hearing that it was taking into account "the nature and circumstances of the crimes, and history, character and condition of [Mitchell]." The court indicated that it had considered a letter from Mitchell's attorney that stated Mitchell suffered from schizophrenia, depression, and anxiety. The court stated, however, that it could not "ignore the serious nature of this crime and all of the surrounding facts and circumstances." The court noted Mitchell's extensive criminal history and the need to protect the public. The court concluded that "imprisonment [was] necessary for the protection of the public, because the risk [was] substantial that during any period of probation, [Mitchell] would engage in additional criminal conduct, and because a lesser sentence would depreciate the seriousness of the . . . crimes." We cannot find an abuse of discretion in the sentences imposed in this case.

## V. CONCLUSION

We find no merit to Mitchell's assertions of error on appeal. We affirm.

AFFIRMED.